# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SPY OPTIC INC.,**

      **Plaintiff,**

v.                                                 Case No:   6:16-cv-1541-Orl-31GJK

**MELBOURNE WHOLESALE, INC.,**

      **Defendant.**

# REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S AMENDED MOTION FOR DEFAULT JUDGMENT (Doc. No. 65)** |
| **FILED:** | **November 2, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL BACKGROUND

On September 29, 2016, Plaintiff filed the operative complaint (the "Complaint") against Defendant alleging claims of federal trademark infringement ("Count I") and false designation of origin / unfair competition ("Count II") under the Lanham Act, 15 U.S.C. § 1051, *et seq.* Doc. No. 18 at 7-9. The following facts are taken from the Complaint. Plaintiff uses the marks SPY and a cross logo (collectively, the "Spy Marks") for the developing, advertising, and marketing of sunglasses, sunglass products, apparel, and sporting goods. *Id.* at ¶ 11. Plaintiff owns the Spy Marks, and the marks have been registered with the United States Patent and Trademark Office.

*Id.* The Spy Marks have never been abandoned and are a symbol of Plaintiff's quality, reputation, and goodwill. *Id.* at ¶ 15.

Counterfeit reproductions of sunglasses bearing the Spy Marks were made, and Defendant supplied such reproductions to local gas stations located in eastern Florida.[1] Doc. No. 18 at ¶¶ 18-21. Defendant is a competitor and copied the Spy Marks in an effort to exploit Plaintiff's market reputation. *Id.* at ¶ 22. Plaintiff never authorized Defendant to manufacture, sell, or offer to sell products bearing the Spy Marks, and Defendant has never been a licensee to use the Spy Marks. *Id.* at ¶ 23. Defendant has had full knowledge of Plaintiff's ownership of the Spy Marks, and has engaged in infringing activities knowingly, intentionally, and with reckless disregard to Plaintiff's rights to the Spy Marks. *Id.* at ¶¶ 24-25. Defendant used the Spy Marks in interstate commerce and advertising. *Id.* at ¶ 30. Defendant's infringing activities are likely to cause confusion, deception, and mistake in the minds of customers. *Id.* at ¶ 26. Defendant's conduct is likely to create a false impression and deceive customers into believing that there is a connection between Plaintiff's authentic goods and the counterfeit goods Defendant supplied. *Id.* If Defendant's actions are not enjoined, Plaintiff and the consuming public will suffer harm. *Id.* at ¶ 25.

On October 31, 2016, Plaintiff served the Complaint on Defendant. Doc. No. 34 at 2. On December 20, 2016, Defendant filed its answer and affirmative defenses. Doc. No. 50. On June 23, 2017, Defendant's counsel filed a motion seeking withdrawal of representation. Doc. No. 51. Noting that a corporation cannot proceed without counsel, the undersigned denied the Motion, but gave Defendant twenty-one days to obtain counsel. Doc. No. 52 at 2. The undersigned warned Defendant that failure to retain substitute counsel may result in the Court striking its answer and

---

[1] Plaintiff initially named the gas stations as Defendants, alleging that they were selling the counterfeit sunglasses. Doc. No. 18 at ¶¶ 18-20. Plaintiff has since dismissed its claims against the gas stations.

affirmative defenses and directing the Clerk to enter clerk's default against it. *Id.* Counsel never appeared on behalf of Defendant by above-referenced deadline.

On July 18, 2017, Defendant's counsel filed a renewed motion seeking withdrawal of representation. Doc. No. 54. The undersigned granted the Motion and directed the Clerk to strike Defendant's answer and affirmative defenses and enter clerk's default against the same. Doc. No. 55. On August 23, 2017, the Clerk entered default against Defendant. Doc. No. 56. On November 2, 2017, Plaintiff filed a motion (the "Motion") seeking default judgment against Defendant. Doc. No. 65. Plaintiff's requests a total of $519,997.83 which consists of $500,000 in statutory damages and $19,997.83 in pre-judgment interest. *Id.* at 18-25. Plaintiff also requests a permanent injunction against Defendant, post-judgment interest on any statutory damages awarded, and a determination that it is entitled to reasonable attorneys' fees and costs.[2] *Id.* at 23-25.

## II. APPLICABLE LAW

The Federal Rules of Civil Procedure establish a two-step process for obtaining a default judgment. Fed. R. Civ. P. 55. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure (and that fact is made to appear by affidavit or otherwise) the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

---

[2] Plaintiff does not quantify the attorneys' fees and costs requested, but only requests that the Court determine its entitlement to the same. Doc. No. 65 at 23.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as

If a plaintiff is entitled to default judgment, then the Court must consider whether plaintiff is entitled to the relief he or she requests in their motion for default judgment. With respect to a request for damages, the plaintiff bears the burden of demonstrating that they are entitled to recover the amount of damages sought in their motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default. *Id.* Rather, the Court must determine both the amount and character of damages. *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters …" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). *See also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). However, no hearing is needed "when the district court already has a wealth of evidence from the [movant], such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Id*. at 1232 n.13. *See also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

---

binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Before entering default judgment, a court must ensure it has subject-matter jurisdiction over the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (courts have obligation to ensure subject-matter jurisdiction). 28 U.S.C. § 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff alleges claims of federal trademark infringement and false designation of origin / unfair competition under the Lanham Act, which is a federal statute. Doc. No. 18 at 7-9. Thus, it is recommended that the Court find that it has subject matter jurisdiction over the case.[4]

### B. Liability

#### 1) Federal Trademark Infringement

Count I alleges federal trademark infringement under 15 U.S.C. §1114(1)(a). Doc. No. 18 at 8. The statute prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (citing 15 U.S.C. §1114(1)(a)). The Eleventh Circuit has held that in order to prevail on a federal trademark infringement claim, the plaintiff must show that: 1) its mark was used in commerce by the defendant without the plaintiff's consent; and 2) such unauthorized use was likely to cause confusion, to cause mistake, or to deceive. *Id.*

---

[4] Before the Court issues a default judgment, it must also analyze whether the defendant was properly served. *See Thomas Cook UK Ltd. v. Maesbury Homes, Inc.* 280 F.R.D. 649, 652 (M.D. Fla. 2012). Because Defendant made an appearance in this case, the undersigned finds no issues regarding service of process.

Here, taking the Complaint's allegations as true, Plaintiff is the owner of the Spy Marks, which are registered with the United States Patent and Trademark Office. Doc. No. 18 at ¶ 11. Defendant, without authorization, used the Spy Marks in interstate commerce and advertising, and such actions likely caused "confusion, deception, and mistake in the minds of consumers, the public, and the trade."[5] *Id.* at ¶ 26, 30. The Complaint also states that Defendant distributed counterfeit reproductions of sunglasses bearing the Spy Marks to certain gas stations located in eastern Florida. *Id.* at ¶¶ 18-21. The gas stations then sold those reproductions, and those sales were later discovered by Plaintiff. *Id.* at ¶¶ 18-20. Considering the foregoing, it is recommended that the Court find Defendant liable as to Count I under 15 U.S.C. §1114(1)(a). *See Optimum Techs., Inc.,* 496 F.3d at 1241.

### 2) False Designation of Origin / Unfair Competition

Count II alleges false designation of origin / unfair competition under 15 U.S.C. §1125(a). Doc. No. 18 at 8. The statute prohibits the use in commerce any false designation of origin "which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. §1125(a). "To establish a prima facie case under § 1125(a), a plaintiff must show: (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it "such that consumers were likely to confuse the two." *Custom Mfg. and Eng'g, Inc. v.*

---

[5] Furthermore, Courts have held that when "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of and demand for, another's product, there is a presumption of likelihood of confusion." *Microsoft Corp. v. Moss,* No. 1:06–CV–1670–JOF, 2007 WL 2782503, at * 5 (N.D. Ga. Sept. 20, 2007) (citations omitted).

*Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007) (citing authority); *Brain Pharma, LLC v. Scalini*, 858 F.Supp.2d 1349, 1355-56 (S.D. Fla. 2012).[6]

As noted above, Plaintiff alleges that it is the owner of the Spy Marks and that such marks are registered with the United States Patent and Trademark Office. Doc. No. 18 at ¶ 11. Plaintiff also alleges that Defendant, without authorization, used the Spy Marks in interstate commerce and that such use is "likely to cause confusion, mistake, or … deception … as to the source, origin affiliation, association, or sponsorship of [Plaintiff's] goods and services or Defendant's goods and services." *Id.* at ¶¶ 30, 39. Considering the foregoing as true, it is recommended that the Court find Defendant liable as to Count II under 15 U.S.C. §1125(a).

**C. Relief**

**1) Injunctive Relief**

Plaintiff seeks a permanent injunction against Defendant enjoining it from infringing upon the Spy Marks. Doc. No. 65 at 24-25. "Federal courts may grant permanent injunctions where infringement is found to have occurred in order to prevent further infringing use of a mark, and such injunctions should be designed to keep the former infringers 'a safe distance away' from the protected mark." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008). In order for a court to impose a permanent injunction, the plaintiff must show that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 392-93 (2006). "The decision to grant or deny permanent

---

[6] The elements for a claim under Section 1125 are the same as a claim under Section 1114(1)(a). *See Chanel, Inc. v. Besumart.com,* 240 F.Supp.3d 1283, 1289 (S.D. Fla. 2016) (citing *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)) (noting that the "test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim").

injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

Taking the Complaint's allegations to be true, the undersigned finds that Plaintiff has made a sufficient showing for a permanent injunction. Plaintiff alleges that is has been irreparably damaged by Defendant's unfair competition and misuse of the Spy Marks. Doc. No. 18 at ¶ 41. The Eleventh Circuit has held that the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods … [even if] … the infringer's products are of high quality." *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005) (citations omitted).[7] The Complaint also states that Plaintiff has no adequate remedy at law. Doc. No. 18 at ¶ 42. The Eleventh Circuit has recognized that in trademark infringement cases, "there is not adequate remedy at law to redress infringement." *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (citation omitted). Defendant will not be subjected to any undue hardship from a permanent injunction because it had no right to use the Spy Marks, and thus, "could suffer no legitimate hardship by being forced to stop that which [they have] no right to do." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1288 (S.D. Fla. 2010). Finally, issuance of a permanent injunction is in the public's interest because the public has an interest in "not being led astray by the use of inevitably confusing marks...."*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). Considering the foregoing, it is recommended that the Court issue a permanent injunction against Defendant enjoining it from infringing upon the Spy Marks.

---

[7] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

### 2) Statutory Damages

Plaintiff seeks a total of $500,000 in statutory damages under 15 U.S.C. § 1117(c) consisting of $250,000 per counterfeit mark used by Defendant.[8] Doc. No. 65 at 22-23. Section 1117(c) provides that in "a case involving the use of a counterfeit mark … in connection with the sale, offering for sale, or distribution of goods or services," the plaintiff may elect to recover an award of statutory damages. 15 U.S.C. § 1117(c). Section 1117(c) was made into law recognizing that "counterfeit records are frequently nonexistent, inadequate, or deceptively kept … making proving actual damages in these cases extremely difficult if not impossible." *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1219 (S.D. Fla. 2004) (quoting *Tiffany Inc. v. Luban*, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003)). Many courts have found statutory damages appropriate in default judgment cases. *Id.* (citing authority).

Section 1117(c) allows for statutory damages of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2). Thus, the Court may award damages between $1,000 to $200,000 per counterfeit mark per type of goods or services sold. *Id.* If the Court finds that the defendant's use of the counterfeit mark was willful, the Court may award up to $2,000,000 per counterfeit mark per type of goods or services sold. *Id.*

"District courts have wide discretion in awarding statutory damages." *Automobili Lamborghini SpA v. Lamboshop, Inc.*, No. 2:07–CV–00266–JES–SPC, 2008 WL 2743647, at * 5

---

[8] Photos of Defendant's counterfeit sunglasses show that they bear the Spy Marks. Doc. No. 65-1 at 5-10.

(M.D. Fla. Jun. 5, 2008). In calculating statutory damages under Section 1117(c), courts have generally considered: "(1) the expenses saved and profits reaped; (2) the revenue lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect of others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 1:14–cv–22859–JAL, 2014 WL 4948632, at *4 (S.D. Fla. Oct. 2, 2014). "'Statutory damages are not intended to provide a plaintiff with a windfall recovery;' they should bear some relationship to the actual damages suffered." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F.Supp.2d 1303, 1313 (M.D. Fla. 2008) (quoting *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F.Supp. 560, 568–69 (S.D.N.Y. 1995))

Here, Plaintiff has provided little support the first two factors. Plaintiff's counsel provides a declaration stating that Defendant claimed to have distributed approximately two hundred sunglasses, but Defendant did not provide any documentation substantiating that number or any profits made from those purported sales. Doc. No. 65-1 at 2. The Complaint states that Defendant distributed counterfeit sunglasses to local gas stations. Doc. No. 18 at ¶¶ 18-21. The undersigned finds it likely that these local gas stations sold the sunglasses at issue as a low price authentic version. Given the foregoing, it appears that a fairly low volume of sunglasses were sold, and it appears that those sunglasses were sold for a relatively low price because they were sold in gas stations.

With regard to the third factor, the Complaint states that Plaintiff uses the Spy Marks in its national sales of eyewear and spends substantial time, money, and other resources developing and promoting the Spy Marks. Doc. No. 18 at ¶¶ 13, 15. As to the fourth and seventh factors, the

undersigned recognizes that granting a large statutory award would deter future infringers by reducing the economic incentives in infringing upon the Spy Marks. *See Luxottica Grp. S.p.A.,* 2014 WL 4948632 at *5 (noting that if "this Court were to award only nominal damages, this Defendant, and others similarly situated, would merely factor this cost in their future infringing activities"). The fifth and sixth factors also weigh in Plaintiff's favor. The Complaint states that Defendant infringed upon the Spy Marks knowingly, intentionally, and with reckless disregard to Plaintiff's rights to the Spy Marks. *Id.* at ¶¶ 24-25. *See also PetMed Express,* 336 F.Supp.2d at 1120 (citations omitted) (noting that "the Court may infer willfulness from Defendants' default"). Finally, even though Defendant made an appearance in this case, it never provided any particular records from which to assess the value of the infringing material produced. Doc. No. 65-1 at 2.

Considering the above stated factors, statutory damages of $15,000 per mark appear to be appropriate. Such value follows other awards given in similar cases. *See Hardy Way, LLC v. A.J. Nails, Inc.*, No. 8:10–cv–230–T–23EAJ, 2010 WL 3042420, at * 1 (M.D. Fla. July 30, 2010) (awarding $20,000 in statutory damages based on the discovery of five sunglasses infringing upon plaintiff's mark); *Chanel, Inc. v. P'Ship or Unincorporated Ass'n*, No. 1:12–cv–22745, 2014 WL 352208, at * 7 (S.D. Fla. Jan. 31, 2014) (noting $6,000 per mark to be customary, but awarding $18,000 per mark infringed in case involving Chanel counterfeit sunglasses); *Coach, Inc. v. Cosmetic House*, No. 10–2794 (WHW), 2011 WL 1211390, at * 6-7 (D.N.J. Mar. 29, 2011) (awarding $10,000 per mark infringed as to "numerous" Coach counterfeit sunglasses sold for $5.00 each). Thus, because Defendant willfully infringed upon two of the Spy Marks, it is recommended that the Court award $30,000 in statutory damages pursuant to 15 U.S.C. § 1117(c).

### 3) Prejudgment Interest

Plaintiff requests prejudgment interest on any statutory damages awarded at a rate of four percent from October 31, 2016 to November 2, 2017. Doc. No. 65 at 23-24. "In Lanham Act cases, prejudgment interest is available in the Court's discretion to successful plaintiffs." *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F.Supp.2d 1310, 1317 (S.D. Fla. 1998). Section 1117 provides that in cases involving the intentional use of a counterfeit mark:

> The court may award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, beginning on the date of the service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on the date such entry is made, or for such shorter time as the court considers appropriate.

15 U.S.C. § 1117(b). Thus, the Court may award prejudgment interest at an annual rate established under 26 U.S.C. § 6621(a)(2) beginning on the date a plaintiff's initial pleading is served and ending on the date judgment is entered, or for a shorter time as the Court finds appropriate. *Id.* The annual interest rate established under Section 6621(a)(2) shall be the "federal short-term rate … plus three percentage points." 26 U.S.C. § 6621(a)(2). For the purposes of Section 6621, the federal short-term rate shall be rounded to the nearest full percent. 26 U.S.C. § 6621(a)(3).

After reviewing the federal short-term rates between October 2016 and November 2017, the undersigned finds that the federal short-term rate for that period was between .66 percent and 1.38 percent. *See also Index of Applicable Federal Rates (AFR) Rulings*, available at: https://apps.irs.gov/app/picklist/list/federalRates.html. Rounding the above-referenced rates to the nearest percent and adding three percentage points pursuant to 26 U.S.C. § 6621(a)(2), the annual interest rate for the purposes of prejudgment interest under Section 1117(b) is four percent. *Id.*

Here, Plaintiff requests prejudgment interest on any statutory damages awarded at a rate of four percent from October 31, 2016, the date Defendant was served, to November 2, 2017, the date the Motion was filed. Doc. No. 65 at 23-24. While Plaintiff seeks prejudgment interest for a defined time period, Section 1117 provides that Plaintiff is entitled to prejudgment interest from the date the Complaint was served on Defendant to the date judgment is entered. 15 U.S.C. § 1117(b). Thus, it is recommended that the Court award prejudgment interest on the statutory damages awarded at a rate of four percent from October 31, 2016 to the date judgment is entered in this case.[9]

**D. Attorneys' Fees and Costs**

**1) Attorneys' Fees**

Plaintiff also requests attorneys' fees under 15 U.S.C. § 1117(a), arguing that it is entitled to attorneys' fees due to Defendant's willful, malicious, and deliberate behavior. Doc. No. 65 at 23. Specifically, the Motion states that Section 1117(a) "does not define the term 'exceptional cases,' but the Eleventh Circuit has stated that 'in this context, an exceptional case is one where the infringing party acts in a malicious, deliberate, or willful manner.'" *Id.* at 23.

Section 1117 provides that courts may award attorneys' fees to the prevailing party in exceptional cases. *Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc.*, No. 8:16-cv-1311-CEH-TGW, 2017 WL 1987247, at * 6 (M.D. Fla. Feb. 21, 2017) (citing 15 U.S.C. § 1117(a)). While the Eleventh Circuit has held that an exceptional case can be one involving malicious, deliberate, or willful infringement, the Supreme Court provided its definition of an exceptional case in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1751

---

[9] Plaintiff also requests post-judgment interest pursuant to 28 U.S.C § 1961. Doc. No. 65 at 24. The statute provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court [, and such] interest shall be calculated from the date of the entry of the judgment …" Thus, pursuant to 28 U.S.C § 1961, such interest shall accrue from the date judgment is entered in this case.

(2014). *In Octane Fitness*, the Supreme Court held that an exceptional case is one that "stands out from others with respect to the substantive strength of a party's litigating position, considering both the governing law and the facts of the case, or the unreasonable manner in which the case was litigated." *Id.* The Supreme Court also held that "district courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[10] *Id.*

The undersigned notes that a "failure to respond does not make the case exceptional …" *Hunter Residential Servs., LLC*, *v. AAA Randpro Plumbing, Inc.*, No. 8:16-cv-1311-CEH-TGW, 2017 WL 1987247, at * 6 (M.D. Fla. Feb. 21, 2017). Nevertheless, the facts show that regardless of Defendant's default, Plaintiff has a strong litigating position. *Octane Fitness, LLC,* 134 S.Ct. at 1751. Taking the Complaint's allegations as true, Defendant engaged in willful infringement by distributing sunglasses bearing the Spy Marks and pawning them off as though they were authentic glasses made by Plaintiff. Doc. No. 18 at ¶ 26. Defendant's infringement likely led to confusion, mistake, and deception within the minds of consumers and caused injury to Plaintiff's nationwide business and reputation. *Id. at* ¶¶ 32, 34. As set forth above, Defendant's actions clearly violate the Lanham Act, which was passed to deter such behavior. *See supra* pp. 5-7. Thus, considering Plaintiff's strong litigating position along with the totality of the circumstances, it is recommended that the Court find this case to be exceptional and award Plaintiff its attorneys' fees under 15 U.S.C. § 1117(a).

---

[10] This Court has applied the *Octane Fitness* standard in trademark cases. *BMW of N. Am. LLC v. Cuhadar,* No. 6:14–cv–40–Orl–37DAB, 2014 WL 5420133, at *5 (M.D. Fla. July 10, 2014) ("[t]he Eleventh Circuit standard of defining exceptional as malicious, fraudulent, deliberate and willful cases ... appears to be modified by *Octane*"); *Hi–Tech Pet Prods.. Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co.,* No. 6:14–cv–759–0rl–22TBS, 2015 WL 926023, at * 2 (M.D. Fla. Mar. 4, 2015) (applying the *Octane Fitness* standard and finding the case to be exceptional because of the "uncommon, rare, and not ordinary nature of Defendants' infringement").

### 2) Costs

Under Section 1117, a prevailing plaintiff is entitled to recover costs. 15 U.S.C. §1117(a). The Motion states that Plaintiff will submit a bill of costs within fourteen days after judgment is entered. Doc. No. 65 at 23. Considering the foregoing, it is recommended that the Court award costs to Plaintiff.

## IV. CONCLUSION

Considering the foregoing, it is **RECOMMENDED** that the Motion (Doc. No. 65) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1) The Court should enter Default Judgment in Plaintiff's favor and against Defendant in the total amount of $30,000 plus prejudgment interest at a rate of four percent from October 31, 2016 to the date judgment is entered and post-judgment interest pursuant to 28 U.S.C § 1961; and

2) The Court should issue a permanent injunction against Defendant in the manner provided in Plaintiff's proposed order (Doc. No. 65-2 at 1-3); and

3) The Court should award Plaintiff its attorneys' fees and costs and direct Plaintiff to file a motion quantifying such fees and costs within fourteen days after entry of judgment; and

4) Otherwise, the Court should **DENY** the Motion.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 31, 2018.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy